# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 96-1448
_____

Mary Corder, doing business as   *
Corder Convenience Store, Inc.,   *
dba 7-Eleven 27472B,   *
  *
        Appellant,   *   Appeal from the United States
  *   District Court for the
    v.   *   Eastern District of Missouri.
  *
United States of America,   *
  *
        Appellee.   *

_____

Submitted:  November 26, 1996

Filed:  February 24, 1997
_____

Before BOWMAN, MAGILL, and LOKEN, Circuit Judges.
_____

LOKEN, Circuit Judge.

Mary Corder owns a small 7-Eleven food store in St. Louis.  In August 1994, an employee working alone at the store on three occasions exchanged a total of $305 in cash for $610 in food stamp coupons offered by a Department of Agriculture investigator.  The Department's Food and Consumer Service (FCS) then charged Corder with illegal trafficking in violation of the Food Stamp Program. See 7 U.S.C. §§ 2021, 2024(b)(1); 7 C.F.R. §§ 271.2, 278.2(a). Corder requested that she be assessed a civil monetary penalty in lieu of permanent disqualification from the Program.  FCS determined that Corder meets the criteria for a monetary penalty set forth in 7 C.F.R. § 278.6(i) and imposed the maximum penalty authorized by statute, $40,000.  Corder commenced this action seeking judicial review of the sanction.  The district court

granted FCS summary judgment, and Corder appeals. Concluding that the formula used to determine this monetary penalty is arbitrary and capricious, at least as applied to Corder, we reverse.

Congress has dealt harshly with food stamp traffickers -- those who barter food stamps for cash, guns, drugs, or other ineligible consideration. Prior to 1988, 7 U.S.C. § 2021(b)(3) mandated permanent disqualification of first offenders, a sanction so harsh -- because of its devastating impact on stores doing business in low income neighborhoods -- that reviewing courts struggled with the question whether innocent store owners should be liable for employee trafficking. In 1988, Congress amended the statute, authorizing FCS to impose a monetary penalty in lieu of permanent disqualification in carefully limited circumstances. 7 U.S.C. § 2021(b)(3)(B) (1988). The legislative history clarified that innocent store owners are liable, while recognizing the need for a less harsh monetary sanction in some cases:

> The permanent disqualification of retail food stores upon the first trafficking offense -- without any evaluation of preventive measures taken or complicity in the trafficking -- seems excessively harsh.
>
> *   *   *   *   *
>
> The Committee expects [FCS] to continue to vigorously pursue and punish those perpetrators involved in food stamp fraud, including store personnel and owners that are culpable or negligent with respect to trafficking offenses. . . . However, innocent persons should not be subject to the harsh penalty of disqualification where a store or concern has undertaken and implemented an effective program and policy to prevent violations.
>
> *   *   *   *   *
>
> With Secretarial discretion, we can be assured that the punishment will more closely fit the crime.

H.R. Rep. No. 100-828, pt.1 at 27-28 (1988). <u>See generally</u> <u>Ghattas</u>

v. United States, 40 F.3d 281 (8th Cir. 1994); Freedman v. United States Dep't of Agric., 926 F.2d 252, 255-59 (3d Cir. 1991).

In this case, it is undisputed that Corder timely requested and met the criteria for the alternative monetary sanction. She submitted substantial evidence that she was neither aware of nor benefitted from the violations,[1] and that she had in place before the violations occurred a comprehensive compliance policy and employee training program. See 7 C.F.R. § 278.6(i). Therefore, in January 1995, FCS granted her request for the alternative sanction, assessing a claim for $610 in actual loss, see 7 C.F.R. § 278.7(a), and a civil monetary penalty of $40,000, the maximum authorized by 7 U.S.C. § 2021(b)(3)(B). Corder appealed, and an administrative review officer affirmed, concluding that the penalty was computed in accordance with the formula for first offenders set forth in 7 C.F.R. § 278.6(j)(1)-(3). The district court agreed.

The $40,000 penalty at issue is a quasi-criminal sanction. See First Am. Bank v. Dole, 763 F.2d 644, 651 & n.6 (4th Cir. 1985); United States v. Sanchez, 520 F. Supp. 1038, 1040 (S.D. Fla. 1981), aff'd, 703 F.2d 580 (11th Cir. 1983). From the standpoint of its economic impact on Corder and her enterprise, the penalty is indistinguishable from a criminal fine. Congress has specified the factors that are relevant in imposing criminal fines, including defendant's ability to pay, the burden a fine will impose on defendant and any dependents, the loss defendant inflicted upon others, and so forth. See 18 U.S.C. § 3572. In reviewing criminal fines, this court ensures that the sentencing court has properly considered those factors. See, e.g., United States v. Bauer, 19 F.3d 409, 412-13 (8th Cir. 1994). Similarly, many statutes authorizing civil fines carefully prescribe the factors an agency

---

[1]The employee in question, who was not sanctioned, submitted a statement that he "willingly accept[ed] food stamps for cash" without Corder's knowledge or consent.

must consider in imposing such penalties, and reviewing courts ensure that agencies obey those statutory mandates. <u>See</u> <u>Merritt v. United States</u>, 960 F.2d 15 (2d Cir. 1992) (§ 13(c) of the Shipping Act); <u>First Am. Bank</u>, 763 F.2d at 651-52 & n.6 (Civil Aeronautics Act); <u>F.A.A. v. Landy</u>, 705 F.2d 624, 635-36 (2d Cir.) (Federal Aviation Act), <u>cert. denied</u>, 464 U.S. 895 (1983).

In the 1988 amendment, Congress did not specify the factors FCS must consider in imposing a civil monetary penalty in lieu of permanent disqualification. Instead, Congress generally directed FCS to exercise discretion so that "the punishment will more closely fit the crime." We do not construe this as a grant of standardless discretion to impose whatever fine the agency pleases. Rather, we believe it is a clear signal that FCS should follow principles of fairness that Congress has more clearly delineated in other laws administered by the Department of Agriculture, such as the Packers and Stockyards Act, 7 U.S.C. § 213(b):

> In determining the amount of the civil penalty to be assessed under this section, the Secretary shall consider the gravity of the offense, the size of the business involved, and the effect of the penalty on the person's ability to continue in business.

Following the 1988 amendment, FCS adopted a formula in § 278.6(j) of the regulations that considers none of these factors. The formula starts with one violator-specific fact -- the violator's average monthly food stamp redemptions in the year prior to the violation. It then applies a series of arithmetic multipliers designed, as best we can determine, to guarantee that nearly every *unknowing first offender* will incur the statutory maximum $40,000 penalty. This is not the exercise of informed agency discretion. It is another example of implementing regulations that reflect a hostile attitude toward the alternative monetary sanction Congress enacted in 1988. <u>See</u> <u>Ghattas</u>, 40 F.3d at 284-85 & n.4. We conclude that a fine based entirely on this

formula, as Corder's fine admittedly was, must be overturned as arbitrary, capricious, and contrary to the statute.

That leaves the question of how we should dispose of this case. Corder's $40,000 monetary penalty was payable within thirty days of assessment, see 7 C.F.R. § 278.6(k), and the district court denied a stay of that penalty. In response to Corder's plea of inability to pay, FCS in August 1995 agreed to accept an initial payment of $4,000 and monthly payments thereafter of $1000, or $500 during months of slow business.[2] Presumably, Corder has now made payments under this agreement for one and one-half years and total payments in excess of one-half the statutory maximum. Accordingly, the judgment of the district court is reversed and the case is remanded with instructions to enter an amended final judgment that commutes or voids any remaining unpaid portion of the $40,000 civil monetary penalty.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

In promulgating the regulations, FCS declared that "[t]o allow payment of the civil money penalty to be spread over a long period of time would undermine what the Department believes to be the intent of Congress. . . ." See 54 Fed. Reg. 18641, 18645 (1989). As we noted in Ghattas, this reflects the oppressive enforcement tactic of promulgating "virtually unsatisfiable regulations [which the agency then ignores] at its pleasure." 40 F.3d at 285 n.5.