Satya V. and Shakuntala W. **VASUDEVA** d/b/a 7–Eleven # 2307–19042;  et al.,
Plaintiffs,

v.

**UNITED STATES of America,** et al., Defendants.

No. C96–1252Z.

United States District Court,
W.D. Washington.

May 27, 1998.

Richard C. Tallman, David A. Zapolsky, Bogle & Gates, Seattle, WA, for Plaintiffs.

Philip H. Lynch, U.S. Attorney's Office, Tacoma, WA, for Defendants.

## ORDER

ZILLY, District Judge.

This matter comes before the Court on the parties' cross-motions for summary judgment, docket nos. 35 and 40. The plaintiffs, owners of three 7–Eleven stores in the Seattle area, brought this suit to challenge fines they received because their employees trafficked in food stamps.

The plaintiffs argue in their motion that: the regulation for calculating fines, 7 C.F.R. § 278.6(j), is arbitrary and capricious; the regulations result in an abuse of discretion because the formula for calculating fines does not permit officials to alter the fine in an individual case; the fines are so disproportionate to the harm caused that they violate the Eighth Amendment's Excessive Fines Clause and the Fifth Amendment's Due Process Clause; and any fine imposed on store owners who did not know about or benefit from their employees trafficking and who had policies to prevent trafficking violates the Due Process Clause of the Fifth Amendment. Plaintiffs also claim that they should

not have to pay the government for the value of the food stamps trafficked by their employees. Lastly, Southland Corporation, one of the three plaintiffs, claims that its penalty for selling ineligible items should be reduced from a six month disqualification to a warning letter.

The defendant has also moved for summary judgment, contending that the plaintiffs' fines are not arbitrary and capricious and do not violate the Constitution and that judgment should be granted in its favor as a matter of law.

The Court heard oral argument on April 10, 1998 and took the matter under advisement. Having considered the pleadings filed herein and the arguments of counsel, the Court now enters this Order. The Court DENIES the plaintiffs' motion challenging the fines as arbitrary and capricious, as an abuse of discretion, or as a violation of either the Fifth or Eighth Amendment. However, the Court GRANTS the plaintiffs' motion to reduce Southland's six month disqualification to a warning letter and to vacate the claims against the plaintiffs for the amount of the food stamps trafficked by the employees.

## I. Background

Congress has provided a number of sanctions to prevent the misuse of food stamps. Anyone caught trafficking in food stamps can be held criminally liable pursuant to 7 U.S.C. § 2024(b)(1). Under that provision, if the value of the food stamps involved is $100 or more, the violator will be guilty of a felony, and for a first offense, the punishment can include a fine up to $10,000, imprisonment of not more than five years, or both. If the value of food stamps involved is less than $100, the violator is guilty of a misdemeanor and for a first offense can be fined up to $1,000, imprisoned for not more than one year, or both.

Stores that accept food stamps can also receive a variety of civil penalties for their employees' violations of the food stamp program. Prior to 1988, if an employee was caught trafficking in food stamps, the United States Department of Agriculture (USDA) required that the store be permanently disqualified from participating in the food stamp program, regardless of whether the store knew that the employee was trafficking in food stamps or benefitted from the employee's trafficking. Permanent disqualification includes substantial fines that become due when the store is transferred to another owner. See 7 C.F.R. § 278.6(f)(2) and (g)(1)–(3).

In *R Ranch Market Corp. v. United States,* 861 F.2d 236, 238–240 (9th Cir.1988), the Ninth Circuit struck down as arbitrary and capricious a regulation that permitted permanent disqualification without proof that the store's owners or managers had actual or constructive knowledge of the employee's trafficking. The court explained that "[t]he sanction of permanent disqualification is a draconian penalty, and we are reluctant to infer that Congress intended to impose such a sanction on an unknowing employer absent a clear indication that such was Congress' intent." *Id.* at 239. A clearer indication of Congress' intent was soon forthcoming.

In 1988 Congress amended the Food Stamp Act, altering the court's holding in *R Ranch.* The new statute unmistakably provides penalties for unknowing store owners, but to mitigate the penalty, the amended statute now allows for fines as an alternative to permanent disqualification.

The USDA's regulations implementing the 1988 Amendments permit a monetary fine in lieu of permanent disqualification if: 1) the store had in place prior to the violation an effective training program and compliance policy to prevent trafficking; and 2) neither the store's owners nor managers knew about or benefitted from the employee's trafficking. 7 C.F.R. § 278.6(i). The regulations require stores to submit detailed evidence demonstrating that they satisfy the requirements. 7 C.F.R. § 278.6(i)(2). Permanent disqualification was recently upheld by the Ninth Circuit for stores that fail to show they had an effective policy prior to the violation. *Kim v. United States,* 121 F.3d 1269 (9th Cir.1997).

Once a store qualifies for the civil fine in lieu of permanent disqualification, the amount of the fine is determined by 7 C.F.R. § 278.6(j), the regulation at issue in this case. Under this regulation, the penalty for a first

offender is calculated by a series of steps: first, the store's average monthly sales in food stamps for the previous twelve months is multiplied by 10 percent. The agency's comments in the Federal Register explain that the 10% multiplier is intended to represent the profit a store will make in a month from food stamps and accompanying sales. 55 Fed.Reg. 31809, 31810 (August 6, 1990). Next, the resulting monthly profit is multiplied by 60. That product provides the amount of the fine unless the trafficking transaction involved more than $100 worth of food stamps, in which case the fine is doubled. Higher penalties apply for a second violation: the store's average monthly profit is multiplied by 120 if the food stamps trafficked had a face value less than $100, and the fine is 240 times the average monthly profit if the transaction involved $100 or more in food stamps. For a third violation, the store is permanently disqualified.

The regulations, following the amended statute, 7 U.S.C. § 2021(b)(3)(B), provide a cap on the total amount of the penalty. According to 7 C.F.R. § 278.6(j), a civil money penalty under §278.6(i) "shall not exceed $20,000 for each violation and shall not exceed $40,000 for all violations occurring during a single investigation."

### A. The facts of this case

In the course of a large sting operation, undercover USDA investigators visited stores in the Seattle area participating in the food stamp program and asked clerks either to buy food stamps for cash or accept food stamps for ineligible items. Clerks at all three of the plaintiffs' stores agreed to accept cash for food stamps. The parties have stipulated that, as the administrative proceedings determined, all the plaintiffs had effective training and compliance policies prior to the violations and did not know of or benefit from the violations.

At Mr. and Mrs. Vasudeva's 7–Eleven store in the Greenlake neighborhood, agents made four visits, apparently dealing with the same clerk. The first time, the agent unsuccessfully tried to buy ineligible items; the second time, the agent sold the clerk $65 of food stamps for $25 in cash; and the third

and fourth time, the investigator sold $120 and $100 worth of food stamps, respectively. As a result of the violations, the Vasudevas, whose store averaged $441 per month in food stamp sales, were fined $13,200. The Vasudevas were also required to pay $285 for the food stamps the employee trafficked.

The agency calculated the Vasudevas' fine in the following manner: For the first $65 trafficking offense, the fine was $2640. That amount was obtained by multiplying the average monthly sales of $441 by 10%, rounding to the nearest dollar and then multiplying by 60. For the next $120 trafficking offense, because the fine was $100 or more, the fine was double the amount of the previous fine, yielding $5280. For the last $100 sale, the fine was again $5280. The three fines were then added together for a total fine of $13,-200.

Like the investigation of the Vasudevas' store, the USDA investigators visited the Belays' store four times. The first time a clerk sold $60 worth of food stamps for $30 in cash; the second time, the same clerk told the investigator to come back later; the third time a different clerk allowed the agent to purchase $4.56 of ineligible items; and the last time, the first clerk bought $65 in food stamps for $35. The Belays' 7–Eleven store in Rainier Valley, a poorer neighborhood, had sales of more than $3318 per month in food stamps, and as a result the Belays were fined $39,840 plus $129.56 for the food stamps and ineligible items sold. Some time after the lawsuit was filed, the Belays gave up their store.

The third 7–Eleven store involved in this case, a store that Southland Corporation itself owns and operates, is located on University Way N.E. Investigators visited this store six times. On the first visit, the clerk refused to violate any food stamp regulation; on the second visit, the agent purchased three ineligible items from a different clerk; more ineligible items were purchased on the third and fourth visits from the same clerk that was working on the second visit; on the fifth visit that clerk bought $50 worth of food stamps for $25; and later on a sixth visit, the same clerk paid $60 in cash for $130 worth of food stamps. The store handled $1,431 per

month in food stamp business and was initially fined $25,740, required to pay an additional $234.16 for the food stamps and ineligible items, and disqualified six months for the sale of ineligible items.

The Belays' and the Vasudevas' fines were upheld by the USDA's review officers during the administrative appeal process, but Southland's fine of $25,740 was reduced to $17,160. After the plaintiffs brought the lawsuit, the Vasudevas' fine was reduced from $13,200 to $5,280 and the Belays' from $39,840 to $19,920. No explanation was given for the reductions. Southland's fine remained $17,160.

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate if the record shows " 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Williams v. I.B. Fischer Nev.,* 999 F.2d 445, 447 (9th Cir.1993) (*quoting* Fed. R.Civ.P. 56(c)). In determining whether there are any genuine issues of material fact for trial, the court must view all of the evidence in the light most favorable to the nonmoving party. *Abuan v. General Electric Co.,* 3 F.3d 329, 332 (9th Cir.1993), *cert. denied,* 510 U.S. 1116, 114 S.Ct. 1064, 127 L.Ed.2d 383 (1994). This is true even when the court is presented with cross motions for summary judgment. *High Tech Gays v. Defense Indus. Sec. Clearance Office,* 895 F.2d 563, 574 (9th Cir.1990).

### B. Review under the APA

■ The 1988 Amendments to the Food Stamp Act expressly authorize the USDA to impose fines on store owners who did not know about or benefit from an employee's trafficking and who had an effective training program and compliance program. *See* 7 U.S.C.A. § 2021(b)(3)(B). Thus, the fact that some fine has been imposed cannot provide a valid basis for challenging the regulations as arbitrary and capricious. As the U.S. Supreme Court has stated, in reviewing an agency's interpretation of a statute it administers, a court must ask

whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; ... [but] if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

Courts have held that innocent stores can be penalized for their employees' conduct. See e.g. *Freedman v. United States Dep't of Agriculture,* 926 F.2d 252, 259 (3d Cir.1991) ("The fact that the civil money penalty was to be imposed only if it is determined that a store owner had an effective policy to prevent violations clearly indicates that Congress intended 'innocent' store owners to be subject to the penalties authorized by section 2021(b) of the Food Stamp Act as amended in 1988.").

The plaintiffs' objection is not that any fine would be unacceptable under the Administrative Procedures Act, but rather that the manner in which the fine is calculated under 7 C.F.R. § 278.6(j) should be deemed arbitrary and capricious. Specifically, the plaintiffs argue that the regulation's method of calculating fines penalizes much more heavily stores in poor neighborhoods. Stores in poorer neighborhoods are likely to redeem more food stamps, and since the difference in average monthly profit from food stamps is amplified by a multiplier of 60, 120, or 240, stores in poorer neighborhoods will receive much more severe penalties for a given amount of food stamp trafficking than stores in wealthier neighborhoods.

As the plaintiffs recognize, the statute does not specify how the monetary fine in lieu of permanent disqualification should be calculated and leaves the calculation of fines to the agency's discretion, provided the total amount is within specific caps. The statute states that:

The Secretary shall have the discretion to impose a civil money penalty of up to $20,000 for each violation (except that the amount of civil money penalties imposed

for violations occurring during a single investigation may not exceed $40,000).

7 U.S.C. § 2021(b)(3)(B).

■ In assessing whether an agency rule is arbitrary and capricious, the reviewing court must examine whether

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n v. State Farm Ins.,* 463 U.S. 29, 44, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983). The Ninth Circuit has explained that:

> The APA does not give this court power "to substitute its judgment for that of the agency" but only to "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment."

*Beno v. Shalala,* 30 F.3d 1057, 1073 (9th Cir.1994) (quoting *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971)).

The plaintiffs argue that by penalizing more severely stores in poor neighborhoods, the agency made a clear error of judgment and failed to consider important aspects of the problem. The government responds that the average monthly sales of food stamps is an appropriate factor for calculating penalties because the sales provide an estimate of the likelihood that other trafficking violations have occurred: the more food stamps a store accepts, the more likely violations are to occur. The plaintiffs reply that the agency itself did not consider the rationale proffered by the government.

■ In reviewing agency action, courts must assess the agency's action based on the reasoning the agency actually considered. *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 50, 103 S.Ct. at 2870; *Beno,* 30 F.3d at 1074.

When the USDA accepted comments on the penalty formula in 7 C.F.R. § 278.6(j), Murry's Inc., a food store chain operating in inner cities, objected that the regulation penalizes most heavily stores located in areas where food stamps are frequently used. The agency responded that "the penalty should be proportionate to the offense." 55 Fed. Reg. 31809, 31811 (August 6, 1990). While the agency's remarks are brief and may not demonstrate that the agency's decision was motivated by the government's suggested rationale, it is clear that the agency considered and rejected the argument raised by the plaintiffs. It cannot be said that the agency failed to consider that aspect of the problem.

■ In *Corder v. United States,* 107 F.3d 595 (8th Cir.1997), the court held that a $40,000 fine imposed on a store in lieu of permanent disqualification was arbitrary and capricious. The court reached its conclusion in part because the court concluded that Congress intended to create a "less harsh" sanction than permanent disqualification and that civil monetary fines had been introduced so that "the punishment will more closely fit the crime." *Id.* at 597. The court also cited a provision in the Packers and Stockyards Act, 7 U.S.C. § 213(b), a provision that this court does not believe is applicable to fines under the Food Stamp Act. The reasoning in *Corder* does not support a finding that the fines are arbitrary and capricious in the present case.[1]

While the legislative history does support *Corder's* conclusion that civil fines were supposed to be less harsh than permanent disqualification, the civil fines levied under 7 C.F.R. § 278.6(j) are less harsh, particularly given that permanent disqualification also carries with it substantial fines under 7 C.F.R. § 278.6(g). The legislative history of the 1988 amendments demonstrates that even though a less severe penalty than permanent disqualification was being made available, Congress was still very concerned about trafficking offenses:

---

1. In *Corder* the court voided only the unpaid portion of the $40,000 fine, leaving as the fine the store's previous payments exceeding $20,000.

*Corder,* 107 F.3d at 598. In the present case, the Vasudevas have been fined $5,280, the Belays $19,920, and Southland $17,160.

Sale of food stamps at a discount price or trading food stamps for non-food items is a serious offense. It violates the purpose of the food stamp program and harms needy food stamp families.

Nevertheless, there are instances in which trafficking in food stamps will take place—despite the best efforts of all people committed to a well-run food stamp program. The permanent disqualification of retail food stores upon the first trafficking offense—without any evaluation of preventive measures taken or complicity in the trafficking—seems excessively harsh ...

A retail food store or wholesale food concern which has an effective policy and program to prevent trafficking should not be presumptively disqualified from participation in the Food Stamp Program due to the unauthorized or expressly prohibited acts of store personnel ...

The Committee expects the Department of Agriculture to continue to vigorously pursue and punish those perpetrators involved in food stamp fraud, including store personnel and owners that are culpable or negligent with respect to trafficking offenses. Accordingly the Committee has authorized the imposition of civil monetary penalties of up to $20,000 for trafficking violations by a retail food store or wholesale concern. However, innocent persons should not be subject to the harsh penalty of disqualification where a store or concern has undertaken and implemented an effective program and policy to prevent violations ...

The Act will retain strict penalties—fines can be imposed as well as disqualification from participation in the food stamp program. With Secretarial discretion, we can be assured that the punishment will more closely fit the crime.

H.R.Rep. No. 100–828, at 27–28 (1988).

By giving express maximum fines of $20,000 for a single violation and $40,000 for a single investigation, Congress revealed that it was willing to have substantial fines imposed. The fines in the present case do not exceed those caps and take into account permissible factors in determining the fine.

■ The plaintiffs claim that the agency abused its discretion by using a formula for calculating fines that would be applied without deviation in all cases. But in many regulatory contexts, when Congress leaves a decision to the agency's discretion, Congress does not intend to prohibit the agency from adopting and applying formulas, nor does it require the agency to devise new controlling factors in each and every case before the agency. Using a formula to calculate a fine or determine eligibility for a benefit will often be a valuable means to ensure uniform treatment of cases processed at different times or places. Agency discretion is exercised not in the application of the formula to a particular case but in the choice among formulas. An agency may decide to exclude certain factors from a formula because evaluating those factors accurately costs more than any benefit gained.

To support their abuse of discretion argument, the plaintiffs rely upon a Ninth Circuit case where a banker's lifetime ban from working in the banking industry was overturned because the agency did not show sufficient culpability of the banker. *Kim v. Office of Thrift Supervision*, 40 F.3d 1050, 1053–54 (9th Cir.1994). In that case, however, the regulations themselves specifically required a finding of culpability. In our case, the agency need not make any further finding of culpability beyond measuring a store's average monthly redemption of food stamps.

The Court concludes that 7 C.F.R. § 278.6(j) is not arbitrary and capricious. The agency considered relevant factors and created a formula that imposes fines within the statutory caps. Using a formula to calculate fines is not an abuse of discretion.

### C. Due Process

■ The plaintiffs argue that imposing a fine on a store owner who did not benefit from or know about an employee's trafficking and who had an effective compliance policy violates the Fifth Amendment's Due Process Clause. The Court rejects this contention. Congress can impose strict liability on a store for its employees' trafficking offenses in the store.

In *Kim v. United States*, 121 F.3d 1269 (9th Cir.1997), the court rejected a due process challenge to a store's permanent disqualification. The court explained that because a store owners ability to participate in the food stamp program is not a fundamental right, government action fining or disqualifying a store from participation in the program needs only a rational basis to withstand a substantive due process challenge. *United States v. Alexander*, 48 F.3d 1477 (9th Cir.1995). Rational basis review is not demanding. To show that government action violates substantive due process, "a plaintiff is ordinarily required to prove that a challenged government action was 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.'" *Patel v. Penman*, 103 F.3d 868, 874 (9th Cir.1996), cert. denied, —— U.S. ——, 117 S.Ct. 1845, 137 L.Ed.2d 1048 (1997) (*quoting Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S.Ct. 114, 120, 71 L.Ed. 303 (1926)).

The court in *Kim* reasoned that even though the store did not know about or benefit from the employee's trafficking, permanent disqualification had a rational basis:

> Congress believed that punishing innocent employers for the misdeeds of their employees would create a powerful incentive for employers to guard against illegal or improper conduct. It hardly deserves mention that employers are in a much better position vis a vis the [Food and Consumer Service] to police their employees' daily compliance with the Acts' requirements and observance of its proscriptions.

*Kim*, 121 F.3d at 1274.

The plaintiffs point out that in *Kim* the store owner did not have an effective compliance policy in place, so a penalty could spur the store to undertake that further step. The plaintiffs add that in order for a store to qualify for a civil fine in lieu of permanent disqualification, a store must be found to have an "effective" training and compliance policy, suggesting that the store has done all that it can and that any further putative deterrent effect of a fine is futile. But even though a compliance policy is in place, a fine provides an incentive to enforce that policy vigorously. Agency review of a store's compliance policy is unlikely to provide as effective an incentive to stores to monitor employee violations. Strict liability for innocent stores does not cease to have a rational basis simply because in some instances the penalty may be imposed when the store was powerless to prevent the violation.

The court in *Kim* also rejected that the store owner's procedural due process rights were infringed. As the court noted, a penalized store owner has the right to a de novo trial, a more searching review than is typically available for agency action. *Id* . In sum, the regulations do not violate substantive due process since a fundamental right is not at stake and strict liability for innocent store owners has a rational basis.

**D. Excessive Fines**

The plaintiffs argue that their fines are so great compared to their culpability or the government's loss that the fines violate the Excessive Fines Clause of the Eighth Amendment and the Due Process Clause of the Fifth Amendment.

The plaintiffs rely on *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), where the Supreme Court held that the Eighth Amendment's Excessive Fines Clause is not restricted to criminal cases and can apply when a civil penalty imposed by the government is "punishment." The Court refused, however, to adopt a multi-factor test for determining when a civil fine, such as the civil forfeiture at issue in *Austin*, is constitutionally excessive. The plaintiffs also rely upon another civil forfeiture case, *United States v. Real Property Located at 25445 Via Dona Christa*, 138 F.3d 403 (9th Cir.1998). In that case the Ninth Circuit evaluated a civil forfeiture using a two part test: first, the government had to show a substantial connection between the property and the offense; then, the burden shifted to the claimant to show the forfeiture was " 'grossly disproportionate given the nature and extent of his culpability.'" *Id.* at 407 (quoting *United States v. 6380 Little Canyon Road*, 59 F.3d 974, 985 (9th Cir. 1995)).

Even assuming that the Excessive Fines Clause does apply to the fines in this case and that the Ninth Circuit's two-part test for civil forfeitures should be used, the fines in this case cannot be said to be "grossly disproportionate." The government has a substantial interest in preventing trafficking in food stamps, and while the civil fines determined by 7 C.F.R. § 278.6(j) will often be quite large, the fines are within the caps set by Congress and could reasonably be deemed necessary to deter trafficking.

The cases cited by the plaintiffs construing the Due Process Clause are unpersuasive. In *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), the Court found that a punitive damages award of $2 million for a customer who had unknowingly purchased a repainted car as "new" violated the Due Process Clause. The Court's decision rested, in part, on several factors which indicated that BMW did not "receive adequate notice of the magnitude of the sanction that Alabama might impose" for failing to notify customers of minor repairs. *BMW of North America Inc.*, 517 U.S. at 574, 116 S.Ct. at 1598, 134 L.Ed.2d at 826. Notice of the magnitude of the fine is not an issue in the present case; the plaintiffs themselves requested civil fines in lieu of permanent disqualification and agreed prior to participating in the food stamp program that they could be held liable for their employees' violations.

Further, even assuming that notice is not a dispositive factor and that a case about punitive damages can be directly applied to an agency's calculation of fines, it is important to recognize that the Supreme Court has upheld quite large punitive damage awards. In *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993), six Justices agreed that the Due Process Clause did not require overturning a punitive damages award when a jury had awarded $19,000 in actual damages and $10 million in punitive damages.

In short, the trafficking fines at issue in the present case cannot be said to be so "grossly excessive" as to violate the Due Process Clause or the Eighth Amendment's Excessive Fines Clause.

### E. Other Claims

The agency held the plaintiffs liable for the amount of the food stamps trafficked by their employees because the agency concluded that the stores had submitted false claims in the amount of the trafficked food stamps. As the plaintiffs argue, however, and as the government now admits, the stores never submitted any of the food stamps trafficked by the employees. Accordingly, the Court vacates the $285 fiscal claim against the Vasudevas, $125 of the $129.56 claim against the Belays, and $180 of the $234.16 claim against Southland.

Southland also claims that it should have received a warning letter instead of a six-month disqualification for the non-trafficking violations at its store. Under 7 C.F.R. § 278.6(e)(5), a store shall be disqualified for six months for its first non-trafficking violation if "the evidence shows that personnel of the firm have committed violations such as but not limited to the sale of common nonfood items due to carelessness or poor supervision by the firm's ownership or management." According to 7 C.F.R. § 278.6(e)(7), a warning letter should be issued "if violations are too limited to warrant a disqualification."

The agency provides no evidence that Southland was careless, and in fact, in order for Southland's store to qualify for the fines in lieu of permanent disqualification for the trafficking offenses, the agency had to conclude that the store had an *effective* training program and compliance policy, a finding hardly compatible with "carelessness." In *Plaid Pantry Stores, Inc. v. United States*, 799 F.2d 560 (9th Cir.1986) (per curiam), the court rejected a six month disqualification and concluded that a warning letter should have been issued when the evidence showed that the store owner had done all that it could to ensure compliance with the food stamp program. Given the total absence of any evidence establishing carelessness by Southland's store and given a finding by the agency that the store had an effective training and compliance program, the Southland store should have received a warning letter.

### F. Conclusion

The trafficking fines imposed in this case pursuant to 7 C.F.R. § 278.6(j) do not violate either the Administrative Procedures Act or the Fifth or Eighth Amendments. Consequently, the plaintiffs' trafficking fines are upheld. Since the food stamps trafficked in the plaintiffs' stores were never submitted by the plaintiffs to the government, the agency erred in holding the plaintiffs liable for the amount of those food stamps. The agency also erred in imposing a six-month disqualification for Southland's store because the agency failed to present any evidence of carelessness as required by 7 C.F.R. § 278.6(e)(5).