# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 11-1735

———————

United States of America,

       Appellee,

v.

J & K Market Centerville, LLC,

       Appellant.

\*
\*
\*
\*
\*  Appeal from the United States
\*  District Court for the
\*  Southern District of Iowa.
\*
\*
\*

———————

Submitted: December 14, 2011
Filed: May 10, 2012

———————

Before LOKEN, BRIGHT, and SHEPHERD, Circuit Judges.

———————

SHEPHERD, Circuit Judge.

The Department of Agriculture's Food and Nutrition Service ("FNS") permanently denied an application from J & K Market Centerville, LLC ("J & K Market") to participate in the government's food stamp program, officially known as the Supplemental Nutrition Assistance Program ("SNAP"). J & K Market's ineligibility to participate in SNAP was based on its owner's involvement in a prior food stamp trafficking violation. After reviewing the FNS's decision to disqualify

J & K Market, the district court[1] affirmed the permanent denial of participation, finding that it was the appropriate sanction. J & K Market appeals, arguing that the FNS's determination was arbitrary and capricious and that the FNS should have assessed a monetary penalty instead of permanently disqualifying the store from participating in SNAP. J & K Market also argues that the court erred in finding that J & K Market failed to show that a transfer in the store's ownership was not intended to avoid penalties. We affirm.

I.

J & K Market is a small grocery store that was previously a sole proprietorship enrolled in SNAP. On March 3, 2008, two government informants used a SNAP Electronic Benefit Transfer ("EBT") card to purchase grocery and non-food items, including tobacco products; pay a prior debt; obtain cash; and establish credit for future purchases. This transfer violated a number of SNAP rules. The informants initially requested that the store's owner, Kris Koestner ("Kris"), process the transaction. However, Kris was not present, and Chad Koestner ("Chad"), the store's manager and the owner's son, conducted the unlawful transaction.

Two months later, before the FNS had made a final agency decision regarding J & K Market's continued participation in SNAP under Kris's ownership, Kris sold the store to Chad. Shortly thereafter, Chad incorporated the business as J & K Market Centerville, LLC and filed an application for the new entity to participate in SNAP. A field office of the FNS denied the application, citing 7 C.F.R. § 278.1(b)(3)(iv) & (k)(3)(iv), which require the FNS to consider prior food stamp violations that have not yet been punished and to deny participation in SNAP for a period of time if those

___

[1] The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

violations were committed by an owner or manager. The field office also determined that the denial was permanent under 7 C.F.R. § 278.6(e)(1)(i), which provides that "[t]he FNS regional office shall . . . [d]isqualify a firm permanently if . . . [p]ersonnel of the firm have trafficked as defined in § 271.2."[2] In its denial of authorization, the field office made reference to a charge letter it sent to Kris that outlined a series of SNAP violations committed by J & K Market, including the March 3, 2008 transaction conducted by Chad. J & K Market appealed the denial, and an administrative review officer upheld the field office's actions in a final agency decision.

J & K Market filed a complaint in federal court seeking review of the agency determination, arguing that permanent denial from participation in SNAP was unwarranted under the federal regulations. J & K Market argued that Chad's violation of SNAP rules only warranted a civil penalty. After a bench trial, the district court concluded that J & K Market violated SNAP rules through Chad's actions, that the violation constituted trafficking as defined in 7 C.F.R. § 271.2, and that permanent ineligibility to participate in SNAP was the appropriate penalty. The district court rejected J & K Market's argument that the sale of the business somehow cleansed the store of prior offenses. The court noted that Chad's involvement in the SNAP violation "clearly impacts the business integrity and reputation of J & K Market." The court also observed that "the requirements for a civil penalty . . . were not satisfied." Finally, the court held that an alternate reason to uphold the denial of participation was J & K Market's failure to show that the transfer from Kris to Chad was not performed in order to circumvent the assessment of penalties. This timely appeal followed.

---

[2] The definition of trafficking includes "the buying or selling of coupons, ATP card or other benefit instruments for cash or consideration other than eligible food ." 7 C.F.R. § 271.2.

II.

"The Food Stamp Act provides that issues of fact are to be tried de novo in the district court," and "we will not overturn the trial court's ultimate factual finding unless we find it clearly erroneous." Sims v. U.S. Dep't of Agric. Food & Nutrition Serv., 860 F.2d 858, 862-63 (8th Cir. 1988). To the extent that we must review the FNS's interpretation of the statutes and regulations governing SNAP, we will defer to an agency's interpretations of the statute it is charged with enforcing and the attendant regulations unless we find that a "regulation is contrary to unambiguous statutory language, that the agency's interpretation of its own regulation is plainly erroneous or inconsistent with the regulation, or that application of the regulation in th[e] case was arbitrary or capricious." Ballanger v. Johanns, 495 F.3d 866, 872 (8th Cir. 2007).

On appeal, J & K Market argues that the district court erred in upholding the final determination of the FNS. J & K Market first contends that the agency erred by not applying a civil penalty and argues that permanent denial from SNAP for J & K Market's offense is an arbitrary and capricious sanction. J & K Market also contends that the district court erred in finding that J & K Market failed to show that the transfer from Kris to Chad was unrelated to circumventing likely disqualification from SNAP. We address each of these arguments in turn.

A.

When deciding whether a store is eligible to participate in SNAP, the FNS is governed by 7 U.S.C. § 2018, which provides that the FNS shall consider "the business integrity and reputation of the applicant." 7 U.S.C. § 2018(a)(1). The factors for admission to SNAP are set out in greater detail by section 2018's implementing regulations, which are found in 7 C.F.R. § 278.1. The regulations state

that the FNS shall consider any "[p]revious Food Stamp Program violations administratively and/or judicially established as having been committed by owners, officers, or managers of the firm for which a sanction had not been previously imposed and satisfied." 7 C.F.R. § 278.1(b)(3)(iv). The regulations mandate that if there is evidence of prior, unpunished SNAP violations committed by a store's owner, officer, or manager, those stores "shall be denied [participation in SNAP] for a period of time equivalent to the appropriate disqualification period for such previous violations." 7 C.F.R. § 278.1(k)(3)(iv).

In order to determine the "appropriate disqualification period" for a prior SNAP violation, one must look to 7 U.S.C. § 2021, which sets up a separate regulatory scheme of penalties for stores that are already enrolled in SNAP. Under section 2021, disqualification from participation in SNAP shall be permanent upon "the first occasion or any subsequent occasion of a disqualification based on the purchase of coupons or trafficking in coupons or authorization cards by a retail food store . . . or a finding of the unauthorized redemption, use, transfer, acquisition, alteration, or possession of EBT cards." 7 U.S.C. § 2021(b)(3)(B). Section 2021's implementing regulations reiterate that the penalty for trafficking is permanent disqualification from SNAP. See 7 C.F.R. § 278.6(e)(1)(i).

Here, J & K Market does not dispute the district court's findings of fact concerning the SNAP violations that occurred on March 3, 2008. J & K Market also does not dispute the agency's and the district court's conclusion that the transaction constituted trafficking because it involved "the buying or selling of coupons, ATP cards or other benefit instruments for cash or consideration other than eligible food." 7 C.F.R. § 271.2. Instead, J & K Market directs the court to a provision in 7 U.S.C. § 2021, which states that "the Secretary [of Agriculture] shall have the discretion to impose a civil penalty of up to $20,000 for each violation . . . if the Secretary determines that there is substantial evidence that such store . . . had an effective

policy and program in effect to prevent violations of the chapter and the regulations." 7 U.S.C. § 2021(b)(3)(B). Likewise, the regulations promulgated under section 2021 expressly allow for "a civil money penalty in lieu of permanent disqualification for trafficking" when the conditions enumerated in section 2021 are met. See 7 C.F.R. § 278.6(i).

In its brief, J & K Market argues that section 2021's provision allowing a civil penalty as an alternate punishment demonstrates that Congress wished to diminish the severity of the punishment for single incidents of trafficking and that this provision should be applicable to new applicants to SNAP as well. J & K Market asserts that 7 C.F.R. § 278.1's cross-reference to the "appropriate disqualification period" found in section 2021 and 7 C.F.R. § 278.6 should be read as incorporating the alternative option of a civil penalty. Essentially, J & K Market argues that if a civil penalty could be assessed against a store that is already enrolled in SNAP, it is unreasonable to remove that option simply because the store's legal status has changed and it must reapply for enrollment.

However, this case does not require that we reach the issue of whether 7 C.F.R. § 278.1 provides for an alternative civil penalty for new applicants to SNAP. We agree with the district court's finding that even if the alternative sanction provisions of section 2021 and 7 C.F.R. § 278.6(i) ought to have been considered for J & K Market's new application, J & K Market failed to show (1) any abuse of discretion by the FNS in foregoing the civil penalty and choosing to apply the permanent ineligibility, and (2) any evidence that the qualifications for a civil penalty had even been met. In order to be eligible for a civil penalty under section 2021, a store must have an effective policy in place to prevent SNAP violations. 7 U.S.C. § 2021(b)(3)(B). The store must then present evidence that "the ownership of the store or food concern was not aware of, did not approve of, did not benefit from, and was not involved in the conduct of the violation." 7 U.S.C. § 2021(b)(3)(B)(i). The

-6-

store must also show that its management was similarly uninvolved or that management "was involved in the conduct of no more than 1 previous violation." 7 U.S.C. § 2021(b)(3)(B)(ii)(I) & (II). Here, as an initial matter, the district court found "a lack of 'substantial evidence' showing that J & K Market had 'an effective policy and program in effect to prevent violations.'" The district court also noted that J & K Market failed to show that Kris, the previous owner, was not involved in the illegal transaction, and that the evidence actually suggested his involvement. In response, J & K Market argues that Kris's past actions are irrelevant because the entity is now "wholly owned by Chad." However, this argument only weakens J & K Market's position because the uncontroverted evidence shows that Chad performed the illegal transaction, meaning that J & K Market's current owner and former manager was "involved in the conduct of the violation." 7 U.S.C. § 2021(b)(3)(B)(i) & (ii).

Finally, J & K Market relies on Ghattas v. United States, 40 F.3d 281 (8th Cir. 1994), and Corder v. United States, 107 F.3d 595 (8th Cir. 1997), to argue that permanent disqualification is an arbitrary and capricious sanction under these facts. Ghattas involved a series of trafficking violations that were committed by a clerk without the knowledge or involvement of the store's owner. Ghattas, 40 F.3d at 282-83. The FNS permanently disqualified the store, and we held that the FNS's procedural rules "frustrated congressional intent" by failing to even consider whether a store was eligible for a monetary penalty as provided for in 7 U.S.C. § 2021(b)(3)(B). Id. at 283. In Corder, we found the FNS's formula for calculating civil penalties to be arbitrary and capricious because it "guarantee[d] that nearly every *unknowing first offender* will incur the statutory maximum $40,000 penalty." Corder, 107 F.3d at 598 (emphasis in original). We also emphasized that the store in Corder met all the criteria for an alternative civil penalty because the store had a compliance policy in place and the trafficking offenses were committed by a store clerk who acted alone. Id. at 597. We find that J & K Market's reliance on these cases is misplaced. Both Corder and Ghattas involved "innocent owners" who were obviously

uninvolved in the trafficking violations. As noted above, this case does not involve an "innocent owner," given that Chad performed the illegal transaction at issue. Accordingly, we cannot say that the imposition of permanent ineligibility to participate in SNAP was arbitrary and capricious.

For the foregoing reasons, we find that the district court correctly upheld the agency's final determination.

## B.

J & K Market also challenges the district court's finding that 7 C.F.R § 278.1(k)(6) provided an alternate basis upon which to deny participation in SNAP. Because we find that the agency action was authorized by 7 C.F.R. § 278.1(k)(3)(iv) under the facts of this case, we need not address this issue.

## III.

We affirm the judgment of the district court.

_____