COLLOTON, Circuit Judge.
Jeylani Shariff Mowlana, a native of Somalia, was ordered removed from the United States after the Board of Immigration Appeals concluded that he had been convicted of an aggravated felony. The Board cited Mowlana’s prior conviction under 7 U.S.C. § 2024(b), which forbids the knowing use, transfer, acquisition, alteration, or possession of benefits in a manner contrary to the statutes and regulations of the Supplemental Nutrition Assistance Program, administered by the United States Department of Agriculture. On Mowlana’s petition for review, we conclude that his offense was an aggravated felony, and we therefore deny the petition.
I.
Mowlana was admitted to the United States as a refugee in 2000 and became a lawful permanent resident in 2002. In January 2011, Mowlana pleaded guilty to the unauthorized use, transfer, acquisition, and possession of “food stamp benefits ... of a value of $5,000 or more,” in violation of 7 U.S.C. § 2024(b). Mowlana was ordered to make restitution of $206,634168 to the Department of Agriculture’s Food and Nutrition Service.
In September 2011, the Department of Homeland Security commenced removal proceedings against Mowlana, alleging he was subject to removal pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), because he had been convicted of an aggravated felony. An alien who is convicted of an “aggravated felony” is subject to removal. 8 U.S.C. § 1227(a)(2)(A)(iii). An aggravated felony includes any offense that “involves fraud or deceit in which the loss to the victim or victims exceeds $10,000.” 8 U.S.C. - § 1101 (a) (43) (M) (i).
In this case, an immigration judge ruled that Mowlana’s conviction was for a crime “involving fraud or deceit” because, inter alia, a violation of 7 U.S.C. § 2024(b) involves “a deliberate deception of the government and an impairment of its lawful functions.” The Board agreed, reasoning that because a violation of § 2024(b)(1) required the defendant to know his conduct was unlawful, “[i]n all violations, the defendant commits a fraud upon the United States by falsely representing proper use of the food stamps, with full knowledge that the items are food stamps and that *925 the federal government would not permit such use.” We review the Board’s legal determinations de novo, according deference to the Board’s interpretation of ambiguous provisions in the statutes it administers. Tian v. Holder, 576 F.3d 890, 895 (8th Cir.2009). Because the Board adopted and affirmed the IJ’s decision, we review both decisions on appeal.
To determine whether Mowlana’s conviction under § 2024(b) “involve[d] fraud or deceit,” we apply the so-called categorical approach. See Kawashima v. Holder, — U.S. -, 132 S.Ct. 1166, 1172, 182 L.Ed.2d 1 (2012). Under that analysis, we look “ ‘not to the facts of the particular prior case,’ ” but to whether the elements of the statute of conviction “categorically fit[] within the ‘generic’ federal definition of a corresponding aggravated felony.” Moncrieffe v. Holder, — U.S. -, 133 S.Ct. 1678, 1684, 185 L.Ed.2d 727 (2013) (quoting Gonzales v. Duenas-Alvarez, 549 U.S. 183, 186, 127 S.Ct. 815, 166 L.Ed.2d 683 (2007)). We consider whether a conviction under the statute “necessarily involve[s]” facts that equate to the defined aggravated felony. Id. (internal quotation omitted). In this case, therefore, the question is whether a violation of § 2024(b) necessarily involves facts that “involve[] fraud or deceit.”
To show that § 2024(b) creates an offense outside the scope of the listed aggravated felony, Mowlana must demonstrate a “realistic probability” that the government would apply the statute to conduct that does not involve fraud or deceit. Duenas-Alvarez, 549 U.S. at 193, 127 S.Ct. 815; Armenta-Lagunas v. Holder, 724 F.3d 1019, 1021, 1024 (8th Cir.2013). Our analysis of realistic probability must go beyond the text of the statute of conviction to inquire whether the government actually prosecutes offenses under § 2024(b) in cases involving hypothetical conduct that would not qualify as an aggravated felony. Moncrieffe, 133 S.Ct. at 1686-87, 1693. The concurring opinion seems to conclude that the “realistic probability” inquiry applies only when analyzing a state-law offense. Post, at 930. This court, however, already has endorsed applying Duenas-Alvarez to determine whether & federal offense is categorically a crime involving moral turpitude. Bobadilla v. Holder, 679 F.3d 1052, 1055-57 (8th Cir.2012); see Rios-Diaz v. Holder, 543 Fed.Appx. 617, 618 (8th Cir.2013). In line with decisions from at least three other circuits, we see no reason why fanciful hypothetical or theoretical possibilities should preclude a categorical conclusion that a federal offense is an aggravated felony. See Sampathkumar v. Holder, 573 Fed.Appx. 55, 57 (2d Cir.2014); Familia Rosario v. Holder, 655 F.3d 739, 749 (7th Cir.2011); Accardo v. U.S. Att’y Gen., 634 F.3d 1333, 1337 (11th Cir.2011).
The terms “fraud” and “deceit” are not defined in the Immigration and Nationality Act, so we look to ordinary meanings when the statute was enacted. “Deceit” means “the act or practice of deceiving (as by falsification, concealment, or cheating).” Webster’s Third New International Dictionary 584 (1993); see Kawashima, 132 S.Ct. at 1172. “Fraud” is defined as “an instance or an act of trickery or deceit esp. when involving misrepresentation: an act of deluding.” Webster’s Third New International Dictionary 904 (1993). The accompanying term “involves” is broadening, and an offense “involves fraud or deceit” under subsection (M)(i) as long as it contains elements that “necessarily entail fraudulent or deceitful conduct.” Kawa-shima, 132 S.Ct. at 1172. An offense may involve fraud or deceit even if the terms “fraud” and “deceit” are absent from the text of the statute and are not formal elements of the crime. Id.
Benefits provided under the Supplemental Nutrition Assistance Program, which *926 we will refer to as “SNAP benefits,” are issued to eligible households. They must be used only to purchase food from approved retail stores at prices prevailing in those stores. 7 U.S.C. § 2016(b). To redeem benefits, a beneficiary uses an Electronic Benefits Transfer card, which functions similar to a debit card. See 7 C.F.R. § 274.1(b) (permitting state agencies to issue benefits through the “Electronic Benefit Transfer System” where benefit information is stored electronically, either in a central database or on each benefit card); U.S. Dep’t of Agric., Supplemental Nutrition Assistance Program: Electronic Benefits Transfer Fact Sheet for New Retailers (2014), available at http://www.fns. usda.gov/sites/default/files/snap/EBT-Faet-Sheet.pdf. The beneficiary swipes the EBT card at an electronic Point of Sale device, ahd enters his or her personal identification number. The Point of Sale device then credits the retailer’s account for the purchase amount. Information about the transaction is transmitted to a state electronic benefits transfer contractor, which directs funds from a federal account to reimburse the retailer on a daily basis. See U.S. Gov’t Accountability Office, GAO-08-415, Food Stamp Program: Options for Delivering Financial Incentives to Participants for Purchasing Targeted Foods 7-8 & fig.l (2008), available at http://www.gpo.gov/fdsys/pkg/ GAOREPORTS-GAO-08-415/pdf/ GAOREPORTS-GAO-08-415.pdf.
Mowlana’s statute of conviction, 7 U.S.C. § 2024(b)(1) requires proof that a defendant (1) used, transferred, acquired, altered, or possessed benefits contrary to SNAP statutes or regulations, and (2) knew that his conduct was contrary to the statutes or regulations. See Liparota v. United States, 471 U.S. 419, 433, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985). The Attorney General suggests that prosecutions under § 2024(b)(1) fall into four categories, and that all of them necessarily involve fraud or deceit.
The first category involves benefit recipients or store owners who provide inaccurate information to the government regarding their eligibility for the program. See, e.g., United States v. Gettler, 46 Fed.Appx. 858, 859 (8th Cir.2002) (per curiam); United States v. Hui, 64 Fed.Appx. 264, 265 (2d Cir.2003); United States v. Hebeka, 25 F.3d 287, 290 (6th Cir.1994). This conduct involves deceit because a perpetrator knowingly provides false information to the government. See Kawashima, 132 S.Ct. at 1172.
The second category of prosecutions involves store owners or employees who accept benefits in exchange for ineligible, non-food items, or benefit recipients who use benefits to pay for non-food items. See, e.g., United States v. Mohamed, 727 F.3d 832, 833 (8th Cir.2013); United States v. Uddin, 551 F.3d 176, 178 (2d Cir.2009); United States v. Kemble, No. 11-10014-05-JTM (D.Kan. Aug. 17, 2011). The Attorney General argues persuasively that such violations “involve deceit” because whenever a benefit recipient knowingly uses an EBT card to redeem benefits for ineligible items, or a store owner knowingly allows a redemption for ineligible goods, the offender makes a false representation. The offender “has falsely represented to the government, through the presentation and debiting of the EBT card, that the transaction is valid and lawful even though each knows that such representation is false.” Resp. Br. 22. Because such a transaction is contrary to SNAP statutes, see, e.g., 7 U.S.C. § 2016(b), the electronic representation is false and involves deceit.
Mowlana’s own offense is in this category. He asserts that he was convicted for allowing customers to buy food on store credit and to pay for the credit with SNAP benefits at a later time. The governing regulations prohibit the acceptance *927 of benefits “in payment for items sold to a household on credit.” 7 C.F.R. § 278.2(f). Mowlana’s conduct therefore involved deceit because it misrepresented to the government that each transaction was in accordance with the rules governing the program. A misrepresentation occurred each time Mowlana permitted a customer to redeem benefits for store credit, rather than for food, using an electronic Point of Sale device at the check-out counter.
The third category of violations involves bartering of benefits by trading SNAP benefits for goods or money, or vice versa. See, e.g., United States v. Parson, 288 F.3d 818, 819 (6th Cir.2002); United States v. Gibbens, 25 F.3d 28, 30 (1st Cir.1994). The fourth category involves stealing benefits from eligible households. See United States v. Williams, 97 F.3d 1463 (9th Cir.1996) (unpublished table decision). In these situations, an offender makes no false representation to the government at the time of the violation, but a false representation is likely to occur later if an ineligible person — having obtained SNAP benefits through barter or theft — redeems the benefits at a retailer’s Point of Sale device.
The Board, citing Matter of Flores, 17 I. & N. Dec. 225 (BIA 1980), concluded that violations of § 2024(b) “inherently” involve fraud. Applying the statute that imposes immigration consequences for commission of a “crime involving moral turpitude,” 8 U.S.C. §§ 1101(f), 1182(a)(2)(A)®, the Board has reasoned that where “fraud is so inextricably woven into the statute as to clearly be an ingredient of the crime,” then a violation of the statute necessarily involves moral turpitude. Matter of Flores, 17 I. & N. Dec. at 228. By the same logic, suggests the Board in this case, such a violation necessarily involves fraud or deceit, even if there is no false representation when the offense is committed.
The government’s position draws support from appellate decisions concerning crimes involving moral turpitude. Even where both parties to an unlawful transfer of false identification documents know that the documents are false, the offense “involves inherently deceptive conduct,” because the seller of the fraudulent documents “plac[es] them out into the world.” Lagunas-Salgado v. Holder, 584 F.3d 707, 712 (7th Cir.2009). Similarly, the possession with intent to transfer unlawfully issued identification documents involves deceit even where the documents are not falsified, because the intended transfer would deceive the government and impair the effectiveness of its identification scheme. Yeremin v. Holder, 738 F.3d 708, 715-16 & n. 2 (6th Cir.2013). And the sale of a counterfeit trademark is “an inherently fraudulent crime,” even when the purchaser knows that the item is counterfeit, because “the owner of the mark has been robbed of its value.” Tall v. Mukasey, 517 F.3d 1115, 1119-20 (9th Cir.2008).
For similar reasons, the Board here permissibly concluded that bartering or stealing SNAP benefits involves fraud or deceit. By conducting a forbidden transaction with SNAP benefits, an offender prevents the legitimate use of those benefits by an eligible household for the purchase of food items. See 7 U.S.C. § 2016(b). The offense places SNAP benefits into the stream of commerce, and the only way in which an ineligible person can redeem the benefits is to make a false representation to the government at the point of sale. Unlawful bartering or stealing of SNAP benefits interferes with the effectiveness of the nutrition assistance program by placing benefits into the hands of ineligible persons, and thus necessarily entails fraudulent or deceitful conduct.[2]
*928 Mowlana contends that offenses in these four categories do not necessarily involve fraud or deceit, despite the offender’s guilty knowledge, because § 2024(b) does not require a specific intent to defraud. This construction of the aggravated felony provision is foreclosed by Kaivashima. The alien there was removable as an aggravated felon whose offense involved fraud or deceit, even though his offense of filing a false tax return did not require a specific intent to defraud. See Kawashi-ma, 132 S.Ct. at 1172. The elements of the tax offense in Kawashima were that the defendant made or subscribed to a tax return under the penalties of perjury, that the return was false as to a material matter, that the defendant did not believe that the return was true and correct as to every material matter, and that the defendant acted “willfully with the specific intent to violate the law.” Id. (citing cases). Specific intent to defraud was not an element. See United States v. Pomponio, 429 U.S. 10, 11 & n. 2, 12, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976) (per curiam); Considine v. United States, 683 F.2d 1285, 1287 (9th Cir.1982).[3]
For the reasons stated, we uphold the Board’s conclusion that Mowlana’s conviction under 7 U.S.C. § 2024(b)(1) was for an offense that categorically “involves fraud or deceit” within the meaning of 8 U.S.C. § 1101(a)(43)(M). Mowlana was therefore convicted of an aggravated felony and subject to removal. The petition for review is denied.

. The three decisions cited by the concurring opinion as a reason to reject the Board's *928 categorical conclusion, post, at 929, are unpersuasive authority. That a violation of § 2024(b) might not "involvfe] dishonesty or false statement” for purposes of Federal Rule of Evidence 609(a)(2), see United States v. Mejia-Alarcon, 995 F.2d 982, 990 (10th Cir.1993), is not controlling here. The rule of evidence restricts the admissibility of prior convictions for impeachment purposes at a trial. The terms "dishonésty” and “false statement” in Rule 609 have been defined narrowly in light of the rule’s purpose to admit only convictions tending to show that an accused would be likely to testify untruthfully. Id. at 988-89; see Fed.R.Evid. 609(a)(2) (2005). The aggravated felony provision in the Immigration and Nationality Act includes different text and serves a different purpose. Whether an offense "involves fraud or deceit” is not guided by the same considerations that govern the evidentiary question. The concurrence also cites two unpublished and nonprecedential decisions from the Ninth Circuit. One addresses a different issue — ■ whether a violation of § 2024(b) is a crime involving moral turpitude — and, contrary to the aggravated-felony analysis, see Kawashima, 132 S.Ct. at 1172, focuses on whether § 2024(b) contains an explicit or implicit element of intent to defraud. Huynh v. Holder, 321 Fed.Appx. 649, 651 (9th Cir.2009). The other includes only a conclusory assertion with no analysis. See Nguyen v. Holder, 494 Fed.Appx. 727, 728 (9th Cir.2012).

. Citing Corder v. United States, 107 F.3d 595 (8th Cir.1997), Mowlana also suggests that a store owner may be convicted under § 2024(b) without even knowing that a store employee illegally sold benefits for cash. Our decision in Corder, however, concerned only the propriety of civil monetary sanctions against a store owner, and overturned the fine imposed in that case. Id. at 598. The Supreme Court in Liparota held that a criminal conviction under § 2024(b) requires proof that an offender knew his conduct was contrary to law, 471 U.S. at 433, 105 S.Ct. 2084, and Corder is not to the contrary.