# United States Court of Appeals
## For the Eighth Circuit
_____

No. 16-1220
_____

Deshawn Maurice Fletcher

*Petitioner - Appellant*

v.

United States of America

*Respondent - Appellee*
_____

Appeal from United States District Court
for the District of Nebraska - Lincoln
_____

Submitted: November 17, 2016
Filed: May 26, 2017
_____

Before COLLOTON, BEAM, and GRUENDER, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Deshawn Fletcher appeals the denial of his motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his criminal sentence. For the reasons below, we affirm the district court.[1]

_____

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

## I.

Fletcher pleaded guilty in August 2012 to one count of possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). He was sentenced under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), to 210 months, which the district court subsequently reduced to 158 months under Federal Rule of Criminal Procedure 35(b). Fletcher did not appeal, and his conviction became final on August 16, 2013, when the time to appeal the district court's amended judgment expired. *See* Fed. R. App. P. 4(b)(1)(A); *Never Misses A Shot v. United States*, 413 F.3d 781, 782 (8th Cir. 2005) (per curiam) (noting that a conviction becomes final in the absence of an appeal on the date the time to appeal expires). His ACCA predicate offenses consisted of possession with intent to distribute crack cocaine and two Nebraska felony convictions for making terroristic threats (one as a juvenile and one as an adult). At sentencing, Fletcher did not object to the revised presentence investigation report's ACCA classification. Thus, the district court did not have occasion to articulate how Fletcher's terroristic threats convictions qualified as ACCA predicate offenses. Fletcher filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on November 13, 2015 after the Supreme Court invalidated the residual clause of the ACCA. *See Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015); *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016) (applying *Johnson* retroactively). The district court denied Fletcher's motion, determining that his prior convictions for making terroristic threats qualify under the force clause. Fletcher appeals.

## II.

We review *de novo* a "district court's determination of whether [a] conviction qualifies as a violent felony under the ACCA." *United States v. Schaffer*, 818 F.3d 796, 798 (8th Cir. 2016) (citation omitted). Under the ACCA, a person convicted of being a felon in possession of a firearm is subject to a mandatory minimum sentence

of fifteen years if he has three prior convictions for violent felonies or serious drug offenses. 18 U.S.C. § 924(e)(1). Fletcher does not dispute that he has been convicted of a qualifying serious drug offense. Thus, the only question is whether his two Nebraska felony convictions for making terroristic threats qualify as violent felonies.

The ACCA defines a violent felony as:

> [A]ny crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult that—
>> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>> (ii) is burglary, arson, or extortion, [or] involves the use of explosives . . . .[2]

*Id.* at § 924(e)(2)(B).

The key question in this case is whether a conviction under the Nebraska terroristic threats statute qualifies as a violent felony under the ACCA without the residual clause. However, Fletcher also challenges whether a juvenile conviction for making terroristic threats can meet the preliminary requirement that a qualifying juvenile offense "involv[e] the use or carrying of a firearm, knife, or destructive device." *See id.* The parties have generally assumed that this question is part of a single *Johnson* claim, but we disagree. An act of juvenile delinquency cannot qualify as a violent felony under any clause of the ACCA, including the residual clause, unless the court first determines that it involved the use or carrying of a firearm, knife, or destructive device. In this way, the question of whether a juvenile conviction involved the use or carrying of a firearm, knife, or destructive device is completely

---

[2]The residual clause *Johnson* invalidated is omitted.

separate from the question of whether the juvenile conviction is an enumerated offense or qualifies under the force clause. *See* 924(e)(2)(B)(i), (ii). Indeed, the only way in which the residual clause could have affected a juvenile conviction is if the offense first met the preliminary condition that it involve a firearm, knife, or destructive device. Thus, Fletcher's contention that his juvenile conviction did not involve the use or carrying of a firearm, knife, or destructive device is a separate claim distinct from his *Johnson* claim. As a result, it must be timely and not procedurally defaulted on its own. *See DeCoteau v. Schweitzer*, 774 F.3d 1190, 1192 (8th Cir. 2014) (explaining that timeliness must be assessed on a claim-by-claim basis); *Keithley v. Hopkins*, 43 F.3d 1216, 1217-18 (8th Cir. 1995) (analyzing procedural default on a claim-by-claim basis).

The Government conceded that Fletcher's § 2255 motion was timely and did not raise procedural default either below or on appeal. However, we have the authority to raise either issue *sua sponte*. *Wood v. Milyard*, 566 U.S. 463, 471-72 (2012); *King v. Kemna*, 266 F.3d 816, 822 (8th Cir. 2001) (en banc). Usually, we consider the case as the parties present it, but we may choose to raise procedural default or timeliness *sua sponte* in "exceptional cases" where the Government has not intentionally or strategically chosen not to raise the issues. *Wood*, 566 U.S. at 471 (quotation and citation omitted); *see Jones v. Norman*, 633 F.3d 661, 666 (8th Cir. 2011) ("We have discretion to do so and have done so to correct an obviously inadvertent omission or an obvious computational error." (quotations and citations omitted)). In this case, the Government's failure to raise procedural default was not intentional or strategic but rather came from the mistaken assumption held by both parties (as well as the district court) that the question of whether the juvenile conviction involved the use or carrying of a firearm, knife, or destructive device is part of Fletcher's *Johnson* claim. In these circumstances, we consider it appropriate to raise procedural default *sua sponte*. Having provided the parties notice and the opportunity to be heard through supplemental briefing, *see Dansby v. Hobbs*, 766 F.3d

-4-

809, 824 (8th Cir. 2014), we determine that Fletcher's claim that his juvenile offense did not involve the use or carrying of a firearm, knife, or destructive device is procedurally defaulted.

"Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal. Thus, a petitioner may not raise an issue before the district court for the first time in a § 2255 motion if the issue was not presented on direct appeal from the conviction." *Jennings v. United States*, 696 F.3d 759, 762 (8th Cir. 2012) (quotations and citations omitted). In his § 2255 motion and throughout the appeal, Fletcher argues that *Descamps v. United States*, 133 S. Ct. 2276 (2013), prevents a court from looking beyond the elements of the offense in determining whether his juvenile conviction involved the use or carrying of a firearm, knife, or destructive device. The Supreme Court decided *Descamps* on June 20, 2013. The district court entered its amended judgment on August 2, 2013, and Fletcher's sentence became final on August 16, 2013 when the time to appeal expired. *See* Fed. R. App. P. 4(b)(1)(A); *Never Misses A Shot*, 413 F.3d at 782. Fletcher had the opportunity to raise his *Descamps* argument before the district court and on direct appeal but failed to do so. Thus, the claim is procedurally defaulted unless Fletcher can demonstrate "either cause and actual prejudice, or that he is actually innocent." *See Lindsey v. United States*, 615 F.3d 998, 1000 (8th Cir. 2010) (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)); *Bell v. Norris*, 586 F.3d 624, 633-34 (8th Cir. 2009). Fletcher has not demonstrated that he meets either requirement as to this claim. Therefore, the claim that his juvenile conviction did not involve a firearm, knife, or destructive device is procedurally defaulted.[3]

---

[3]Even if the claim had not been procedurally defaulted, the one-year time period to file a § 2255 motion has long since expired as to this claim. *See* 28 U.S.C. § 2255(f)(1) (setting the time to file a § 2255 motion, as relevant here, to within one year after "the date on which the judgment of conviction becomes final").

Accordingly, we proceed to the central question of this case: whether Fletcher's Nebraska convictions for making terroristic threats qualify under an ACCA clause other than the residual clause. If the convictions cannot qualify under an ACCA provision other than the residual clause, then *Johnson* requires resentencing. However, if the convictions qualify under another clause, then *Johnson* does not affect Fletcher's sentence. Making terroristic threats is not one of the crimes enumerated in § 924(e)(2)(B)(ii). Therefore, our analysis turns on whether the Nebraska terroristic threats statute qualifies under the ACCA force clause, § 924(e)(2)(B)(i).

The ACCA force clause encompasses crimes that "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). The Nebraska terroristic threats statute provides as follows:

> A person commits terroristic threats if he or she threatens to commit any crime of violence:
> > (a) With the intent to terrorize another;
> > (b) With the intent of causing the evacuation of a building, place of assembly, or facility of public transportation; or
> > (c) In reckless disregard of the risk of causing such terror or evacuation.

Neb. Rev. Stat. § 28-311.01(1). Nebraska does not statutorily define "crime of violence." However, the Nebraska Supreme Court has defined the term "crime of violence" as "an act which injures or abuses through the use of physical force and which subjects the actor to punishment by public authority." *State v. Palmer*, 399 N.W.2d 706, 717 (Neb. 1986); *see also State v. Rye*, 705 N.W.2d 236, 138-39 (Neb. Ct. App. 2005) (approving the use of this definition in jury instructions).[4] Fletcher

---

[4]Fletcher contends that *Taylor v. United States* requires us to rely solely on statutory definitions. *See* 495 U.S. 575, 600 (1990). However, *Taylor* does not require us to ignore common law definitions, especially given that the Supreme

argues that the terroristic threats statute does not qualify under the force clause because it can encompass threats against property.

We disagree.[5]  The categorical approach "requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) (applying the categorical approach in the immigration context); *see also United States v. Bell*, 840 F.3d 963, 966 (8th Cir. 2016) (applying *Gonzales* in the ACCA context).[6]  In order "[t]o show that realistic probability, an offender . . . must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." *Gonzales*, 549

---

Court's subsequent opinion in *Descamps* expressly left open that possibility.  133 S. Ct. at 2291 ("We may reserve the question whether, in determining a crime's elements, a sentencing court should take account not only of the relevant statute's text, but of judicial rulings interpreting it.").  By looking to the Nebraska Supreme Court's definition of "crime of violence," we do not engage in a broad survey of judicial rulings interpreting and applying that term to synthesize a definition out of whole cloth.  Rather, we merely accept the definition provided by the Nebraska Supreme Court.

[5]The Government relies on *United States v. Clinkscale*, 559 F.3d 815, 817-18 (8th Cir. 2009), and *United States v. Flannigan*, 367 F. App'x 732, 733 (8th Cir. 2010), but both cases concerned the Minnesota terroristic threats statute, which, as we explain below, materially differs from the Nebraska terroristic threats statute. Moreover, the defendant in *Flannigan* conceded that his convictions qualified as violent felonies under the ACCA.  Fletcher does not so concede.

[6]The district court assumed without deciding that the categorical approach was required.  Because the statute categorically qualifies under the force clause, we likewise need not determine whether the statute's construction permits the modified categorical approach.  *See Descamps*, 133 S. Ct. at 2283, 2293 (requiring the categorical approach to analyze indivisible statutes, but allowing the modified categorical approach to analyze divisible statutes).

U.S. at 193. Fletcher does not provide, nor can we find, a case where Nebraska applied the terroristic threats statute to a threat to property alone. This makes sense because the phrase "an act which injures or abuses through the use of physical force," *Palmer*, 399 N.W.2d at 717, standing alone, is most naturally taken to refer to the injury or abuse of a person. *See generally United States v. Kydney*, No. 8:13CR165, 2013 WL 4774727, at *11 (D. Neb. Sept. 5, 2013) (unreported) ("The cases [under the Nebraska terroristic threats statute] involve threats to kill, hurt, or maim, and most fact patterns show either an attempted battery, an actual physical battery, or a bodily injury.").

Fletcher emphasizes that a threat of arson, which he argues entails only force against property, could possibly qualify as a terroristic threat. However, the only case Fletcher cites in support is *State v. Smith*, No. A-02-1482, 2003 WL 22769284 (Neb. Ct. App. Nov. 25, 2003), an unpublished decision finding that third degree assault is not a lesser included offense of terroristic threats. It makes passing, hypothetical reference to arson in its reasoning. *Id.* at *5 ("[I]t it is possible to threaten to commit a violent crime, such as arson, with the intent to terrorize another person without ever threatening any person in a menacing manner. Thus, the elements of the crime make it possible to commit the offense of terroristic threats without committing third degree assault."). The Nebraska Supreme Court did not adopt this reasoning on appeal. *State v. Smith*, 678 N.W.2d 733, 737 (Neb. 2004) (finding third degree assault not a lesser included offense of terroristic threats because the former requires proof of the victim's actual state of mind while the latter requires proof only of the defendant's intent). Indeed, not all arson is limited to force against property, because arson of an occupied building exerts force against the occupants. "'[T]hat the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter,' because otherwise 'one could say that pulling the trigger on a gun is not a use of force because it is the bullet, not the trigger, that actually strikes the victim.'" *United States v. Rice*, 813 F.3d 704, 706 (8th Cir. 2016) (quoting *United States v. Castleman*, 134 S. Ct. 1405, 1415 (2014)).

Arson of an unoccupied building, in contrast, does not involve force against a person. *United States v. Sanchez-Martinez*, 633 F.3d 658, 660 (8th Cir. 2011).[7] Fletcher points to no case in which Nebraska has applied the terroristic threats statute to a threat to commit arson of an unoccupied building. As a result, even if the theoretical possibility exists that the Nebraska terroristic threats statute could encompass threats only to property, Fletcher has not demonstrated a realistic probability that Nebraska would apply the statute in that manner.

Finally, the Nebraska terroristic threats statute is not analogous to the Minnesota terroristic threats statute at issue in *United States v. Sanchez-Martinez*, 633 F.3d at 660, as Fletcher contends. Although the text of the Minnesota terroristic threats statute is similar to Nebraska's, Minnesota defined "crime of violence" to include crimes like "sale of more than ten grams of cocaine in a ninety-day period, manufacturing methamphetamine in the presence of a child, arson of an unoccupied building, and shooting at an unoccupied transit vehicle," which the court described as not having as an element the use of physical force against the person of another. *Id.* (citation omitted). Thus, the Minnesota terroristic threats statute did not qualify under the ACCA force clause. However, the Nebraska definition is narrower, and, as a result, *Sanchez-Martinez* does not compel the same conclusion.

---

[7]Notably, the Minnesota definition of "crime of violence" also included arson of an occupied building, *see* Minn. Stat. § 609.1095(1)(d) (listing Minn. Stat. § 609.561 (arson in the first degree)), but *Sanchez-Martinez* only characterized arson of an unoccupied building as not involving the use of force against a person. 633 F.3d at 660.

## III.

For the foregoing reasons, Fletcher's convictions for making terroristic threats categorically qualify under the ACCA's force clause and *Johnson* provides no relief. Therefore, we affirm the district court's denial of Fletcher's motion to vacate, set aside, or correct his sentence.

_____