# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-1508
_____

Pah Peh,

*Petitioner*,

v.

Merrick B. Garland, Attorney General of United States,[1]

*Respondent.*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: January 12, 2021
Filed: July 16, 2021

_____

Before COLLOTON, WOLLMAN, and SHEPHERD, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Pah Peh, a native of Thailand and citizen of Burma, petitions for review of an order of the Board of Immigration Appeals. The Board concluded that he was removable because his prior conviction for enticing a minor under Iowa law was a

_____

[1]Attorney General Garland is automatically substituted for his predecessor under Federal Rule of Appellate Procedure 43(c)(2).

"crime of a child abuse." We conclude that the Board's decision cannot be upheld on the rationale advanced by the government, and it is unclear whether the Board relied on other grounds, so we vacate the decision and remand for further proceedings.

## I.

Pah Peh has been a lawful permanent resident of the United States since 2009. In 2019, he was convicted after a guilty plea in Iowa state court of "Enticing, under 16 years, illegal act," in violation of Iowa Code § 710.10(3). The trial information charged that "with the intent to commit sexual abuse or sexual exploitation upon a minor under the age of 13," Peh "did entice or attempt to entice a child under the age of 13." *See* Iowa Code § 710.10(1). Peh pleaded guilty, however, to the lesser offense of "entic[ing] a person reasonably believed to be under the age of sixteen" with the "intent to commit an illegal act upon a minor under the age of sixteen." *Id.* § 710.10(3). The judgment does not specify the "illegal act" that Peh was convicted of intending to commit.

The Department of Homeland Security initiated removal proceedings against Peh on the ground that his conviction qualified as a "crime of child abuse, child neglect, or child abandonment" under 8 U.S.C. § 1227(a)(2)(E)(i). An immigration judge sustained the charge of removability and denied Peh's requests for relief from removal. The Board affirmed the immigration judge's determination that the Department had established Peh's removability under § 1227(a)(2)(E)(i) by clear and convincing evidence. *See* 8 U.S.C. § 1229a(c)(3)(A).

Peh petitions for review of the Board's order. He argues that his conviction for enticing a minor in violation of Iowa Code § 710.10(3) is not a conviction for a "crime of child abuse," and that the Board erred in concluding that he is removable. We review the Board's legal determination *de novo*.

II.

The Immigration and Nationality Act provides than an alien is removable if, at any time after admission, he is convicted of a "crime of child abuse, child neglect, or child abandonment." 8 U.S.C. § 1227(a)(2)(E)(i). Congress did not define "crime of child abuse," but the Board has defined the term in a series of precedential decisions, and Peh does not challenge the agency's definition. *See generally INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999).

The Board interprets "crime of child abuse" to mean "any offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being, including sexual abuse or exploitation." *Matter of Velazquez-Herrera*, 24 I. & N. Dec. 503, 512 (BIA 2008). The definition encompasses offenses that cause "mental or emotional harm," and the victim must be under the age of eighteen years. *Id.*

We use the so-called categorical approach to determine whether Peh's enticement offense in Iowa matches the federal definition of a crime of child abuse. Under that approach, we consider whether the elements of his offense necessarily fit within the Board's generic definition. *Reyna v. Barr*, 935 F.3d 630, 632 (8th Cir. 2019). We must presume that Peh's conviction rested on no more than the least of the acts criminalized by the Iowa statute. *Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013). This analysis, however, is not an "invitation to apply 'legal imagination' to the state offense; there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'" *Id.* at 191 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).

Iowa law provides that a person commits a class D felony "when, without authority and with the intent to commit an illegal act upon a minor under the age of

sixteen, the person entices a person reasonably believed to be under the age of sixteen." Iowa Code § 710.10(3). A person cannot be convicted under the statute unless he "commits an overt act evidencing a purpose to entice." *Id.* § 710.10(5). Methods of enticement include, but are not limited to, "personal contact and communication by any means including through the mail, telephone, internet, or any social media." *Id.* § 710.10(7). "'Entice' is defined as 'to draw on by arousing hope or desire' or 'to draw into evil ways.' Synonymous words include 'allure,' 'attract,' and 'tempt.'" *State v. Hansen*, 750 N.W.2d 111, 114 (Iowa 2008) (quoting *State v. Osmundson*, 546 N.W.2d 907, 909 (Iowa 1996)).

Peh disputes that the Iowa enticement statute meets the Board's requirement of an act that "constitutes maltreatment of a child or that impairs a child's physical or mental well-being." *Velazquez-Herrera*, 24 I. & N. Dec. at 512. He argues that because the state offense can involve an intent to commit "an illegal act upon a minor," a person could be convicted for enticing a minor with intent to commit simple misdemeanors such as disorderly conduct, harassment, and driving above the speed limit. Enticement for those purposes, he contends, would not constitute a crime of child abuse. Peh has not argued that the enticement statute is overbroad as applied to his own case, but the government does not suggest that Iowa Code § 710.10(3) is divisible based on the "illegal act" intended by a perpetrator.

The Board concluded that Peh had "not established a realistic probability that Iowa would successfully prosecute a violation of Iowa Code § 710.10(3) involving any of the 'illegal acts' he cites to in his brief, or any other illegal acts that would not constitute 'child abuse, child neglect, or child endangerment.'" The Board reasoned that "Iowa case law indicates the successful prosecution of offenses of Iowa Code § 710.10(3) only in cases that have caused some sort of infliction of physical, mental, or emotional harm to a child."

-4-

The government defends the Board's decision on the ground that the text of Iowa Code § 710.10(3) does not encompass enticement with intent to commit disorderly conduct, harassment, or other illegal acts posited by Peh. Drawing on the definition of "entice," the government maintains that an offender who intends to commit disorderly conduct or harassment upon a minor does not "draw on [the minor] by arousing hope or desire" or "draw [the minor] into evil ways." The government asserts that the Iowa statute is a categorical match with the federal removal statute, because "illegal acts that entice" constitute a crime of child abuse.

We reject this argument because it mistakenly conflates two separate elements in the Iowa statute. To convict an offender under § 710.10(3), the State must prove that the defendant (1) enticed a person reasonably believed to be under the age of sixteen, and (2) did so with the intent to commit an illegal act upon a minor. The intended "illegal act" need not be the act that entices the minor. The element of enticement speaks only to how the offender draws a minor into a position where the minor could be subjected to an illegal act. It does not address what sort of intended illegal act would satisfy the second element of the offense. Enticement may be accomplished, for example, simply by asking a minor to help find a lost puppy, regardless of what the offender intends to do next. *Hansen*, 750 N.W.2d at 114.

Looking only at the plain text of the Iowa statute, we cannot exclude the possibility that an offender could be prosecuted for enticing a minor with intent to commit disorderly conduct or harassment upon a minor. Disorderly conduct involves making "loud and raucous noise" in the vicinity of a residence or public building "which intentionally or recklessly causes unreasonable distress to the occupants thereof." Iowa Code § 723.4(2). An offender theoretically could entice a minor to visit a building and then blare loud music upon the minor to cause unreasonable distress. Harassment in the third degree includes communicating with another person without legitimate purpose, with intent to "annoy" or "alarm," and in a manner likely to cause "annoyance or harm." *Id.* § 708.7(1)(a)(1). One theoretically could entice

a minor to answer a telephone call for the purpose of taunting the child in a manner that is likely to cause "annoyance," thereby committing harassment upon the minor. However unlikely these scenarios may be, they come within the plain meaning of the Iowa statute.[2]

Whether there is a categorical match between the federal removal statute and the Iowa enticement statute may depend on how the Board and the court apply the "realistic probability" inquiry. As noted, the Supreme Court has said that "there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'" *Moncrieffe*, 569 U.S. at 191 (quoting *Duenas-Alvarez*, 549 U.S. at 193). There are two schools of thought on this requirement.

On one view, illustrated by *Mowlana v. Lynch*, 803 F.3d 923 (8th Cir. 2015), the analysis does not stop with the plain language of a statute that allows for "fanciful hypotheticals" or "theoretical possibilities" that would defeat a categorical comparison. *Id.* at 925. *Mowlana* cited *Moncrieffe*, where the Supreme Court described the "realistic probability" requirement as a "qualification" on the categorical approach, and said that a noncitizen must "demonstrate that the State actually prosecutes the relevant offense in cases involving" nongeneric conduct. 569 U.S. at 191, 206.

---

[2]We can exclude other hypotheticals proffered by Peh because they do not involve an intent to commit an illegal act "upon a minor." Peh suggests that the statute prohibits enticement with intent to commit illegal acts such as driving above the speed limit, selling bubble gum without a license, operating a motor vehicle without a driver's license in immediate possession, failing to clean up after a dog, and abandoning a refrigerator with lockable doors in a place accessible to children. But just as one does not possess marijuana "upon" another person, *see State v. Holtz*, No. 15-1058, 2016 WL 4036112, at *3 (Iowa Ct. App. July 27, 2016), an offender does not commit any of these illegal acts "upon" a minor.

In *Moncrieffe*, the government expressed concern that a conviction under a state firearms law that did not contain an exception for "antique firearms" would fail to qualify as an aggravated felony, because the corresponding federal statute includes an exception for antique firearms. The Court responded that "[t]o defeat the categorical comparison in this manner, a noncitizen would have to demonstrate that the State actually prosecutes the relevant offense in cases involving antique firearms." *Id*. at 206. *Mowlana* read that discussion to mean that "[o]ur analysis of realistic probability must go beyond the text of the statute of conviction to inquire whether the government actually prosecutes offenses . . . in cases involving hypothetical conduct that would not qualify" under a generic federal definition. 803 F.3d at 925; *see also Fletcher v. United States*, 858 F.3d 501, 507-08 (8th Cir. 2017); *Armenta-Lagunas v. Holder*, 724 F.3d 1019, 1024 (8th Cir. 2013).

A competing view, however, holds that where "the statute's reach is clear on its face," the "realistic probability" is "evident from the language of the statute itself." *Gonzalez v. Wilkinson*, 990 F.3d 654, 660 (8th Cir. 2021). In that situation, an alien need not demonstrate any likelihood that the State actually prosecutes cases under hypothetical scenarios that come within the plain language of the statute. *Id*. at 660-61. On this understanding, the realistic probability inquiry focuses on how a state statute might be applied when a statute has indeterminate reach, not on a State's enforcement practices under an unambiguous statute or the frequency with which prohibited conduct is prosecuted. *Id*. at 660. *Gonzalez* read *Moncrieffe* and *Duenas-Alvarez* to support this conclusion, and adverted to a conflict in the circuits on the question. *Compare, e.g.*, *Hylton v. Sessions*, 897 F.3d 57, 63 (2d Cir. 2018), *and Swaby v. Yates*, 847 F.3d 62, 66 (1st Cir. 2017), *with United States v. Vail-Bailon*, 868 F.3d 1293, 1306-07 (11th Cir. 2017) (en banc), *and United States v. Castillo-Rivera*, 853 F.3d 218, 222-24 (5th Cir. 2017) (en banc).

The Board's decision in this case is not clear about how it understood the "realistic probability" requirement. The decision said that Peh had "not established

a realistic probability that Iowa would successfully prosecute a violation of Iowa Code § 710.10(3) involving any of the 'illegal acts' he cites to in his brief." The Board could mean only that the State would not "successfully prosecute" enticement with intent to commit disorderly conduct or harassment because the text of the statute would not encompass that conduct. If so, then we disagree for the reasons discussed, and the Board should determine on remand whether § 710.10(3), so understood, constitutes a crime of child abuse. Alternatively, the Board could mean that the State would not successfully prosecute enticement with intent to commit disorderly conduct or harassment, because there is no showing that those hypothetical scenarios have ever occurred or that the State actually prosecutes the offense in those situations. We decline to review the latter rationale at this stage, however, because the conclusion is not clear on the face of the Board's decision (it would involve an awkward use of the word "successfully"), and the government expressly disavows that approach in its brief on appeal. Resp't Br. 17-18. The Board may clarify its reasoning on remand as warranted.

For these reasons, the petition for review is granted, the Board's decision of February 24, 2020, is vacated, and the case is remanded for further proceedings.

_____