# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-2166
_____

Raad Al-Masaudi,

*Petitioner*,

v.

Merrick B. Garland, Attorney General of the United States,

*Respondent.*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: May 11, 2022
Filed: August 15, 2022

_____

Before COLLOTON, WOLLMAN, and SHEPHERD, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Raad Al-Masaudi petitions for review of a decision of the Board of Immigration Appeals denying his application for relief from removal to Iraq. We conclude that there is no basis to set aside the decision of the Board, and deny the petition for review.

I.

Al-Masaudi is a native and citizen of Iraq. He was admitted to the United States as a refugee in 1997 and adjusted his status to lawful permanent resident in 2008. In 2015, Al-Masaudi pleaded no contest in Nebraska to committing negligent child abuse resulting in serious bodily injury to his six-month-old son. *See* Neb. Rev. Stat. § 28-707(1), (5). In 2019, the Department of Homeland Security charged that Al-Masaudi was subject to removal from the United States under 8 U.S.C. § 1227(a)(2)(E)(i), based on a conviction for a crime of child abuse.

Al-Masaudi moved to terminate the removal proceedings, arguing that his offense of conviction is not a crime of child abuse. The immigration judge (IJ) denied his motion. Al-Masaudi then applied for cancellation of removal under 8 U.S.C. § 1229b(a), asylum under 8 U.S.C. § 1158, withholding of removal under 8 U.S.C. § 1231(b)(3), and withholding and deferral of removal under the Convention Against Torture, 8 C.F.R. §§ 1208.16(c), 1208.17(a).

After a hearing, the IJ denied relief. The IJ concluded that Al-Masaudi's conviction was for a "particularly serious crime" under immigration law, and that he was therefore ineligible for asylum or withholding of removal. Based on the nature and circumstances of his offense, the IJ denied his application for cancellation of removal as a matter of discretion. The IJ denied the application for deferral of removal under the Convention Against Torture because Al-Masaudi had not established that it was more likely than not that he would be tortured if removed to Iraq.

The Board of Immigration Appeals dismissed an administrative appeal. The Board concluded that the Nebraska offense is categorically a crime of child abuse and that Al-Masaudi was convicted of a "particularly serious crime." The Board also

-2-

rejected Al-Masaudi's contention that the IJ erred by considering newspaper articles in support of her ruling, and otherwise upheld the IJ's denial of relief.

## II.

## A.

Al-Masaudi first challenges the Board's conclusion that he is removable under 8 U.S.C. § 1227(a)(2)(E)(i) as an alien convicted of a crime of child abuse. Congress did not define "crime of child abuse," but the Board has defined the term in a series of precedential decisions, and Al-Masaudi does not challenge the agency's definition.

The Board interprets "crime of child abuse" to mean "any offense involving an intentional, knowing, reckless, or criminally negligent act or omission that constitutes maltreatment of a child or that impairs a child's physical or mental well-being, including sexual abuse or exploitation." *Matter of Velazquez-Herrera*, 24 I. & N. Dec. 503, 512 (BIA 2008). An offense that involves endangerment of a child may constitute a crime of child abuse if the statute requires "proof of a 'likelihood' or 'reasonable probability' that a child will be harmed, not a mere possibility or potential for harm." *Matter of Rivera-Mendoza*, 28 I. & N. Dec. 184, 187 (BIA 2020).

We use the categorical approach to determine whether Al-Masaudi's offense of conviction matches the federal definition of a crime of child abuse. Under that approach, we consider whether the elements of the offense necessarily fit within the Board's generic definition. *See Peh v. Garland*, 5 F.4th 867, 869 (8th Cir. 2021). We do not examine the specific facts of Al-Masaudi's case, but instead presume that his conviction rested on the least of the acts criminalized by the Nebraska statute. *Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013). For a state statute to be broader than the generic definition, "there must be a realistic probability, not a theoretical

possibility, that the State would apply its statute to conduct that falls outside the generic definition." *Id.* at 191 (internal quotation omitted).

Al-Masaudi was convicted of violating Neb. Rev. Stat. § 28-707(1), (5). Section 28-707(5) provides that an individual commits a class IIIA felony when he negligently commits child abuse that results in serious bodily injury. An offender commits "child abuse" when he

> causes or permits a minor child to be:
>
> (a) Placed in a situation that endangers his or her life or physical or mental health;
>
> (b) Cruelly confined or cruelly punished;
>
> (c) Deprived of necessary food, clothing, shelter, or care;
>
> (d) Placed in a situation to be sexually exploited . . . ;
>
> (e) Placed in a situation to be sexually abused . . . ; or
>
> (f) Placed in a situation to be a trafficking victim.

Neb. Rev. Stat. § 28-707(1).

Al-Masaudi argues that because the Nebraska offense includes merely "permitting" a child to be placed in a situation that endangers the child, the state offense is broader than the generic federal definition of "child abuse." We reject this contention because there is a categorical match between the federal definition and the Nebraska offense. Even where an offender's act is to "permit" rather than "cause" child endangerment, the Nebraska offense requires that a perpetrator act with a mental state of at least criminal negligence. *See id.* § 28-707(9). The Board's generic

definition covers criminally negligent omissions. *Matter of Velazquez-Herrera*, 24 I. & N. Dec. at 512. The "endangers" element of the Nebraska offense means "to expose a minor child's life or health to danger or the peril of probable harm or loss," and covers "conduct which presents the likelihood of injury" to the child. *State v. Ferguson*, 919 N.W.2d 863, 881 (Neb. 2018). This, too, fits within the requirement of the Board's generic definition that a perpetrator create at least a "reasonable probability" that a child will be harmed. *See Matter of Rivera-Mendoza*, 28 I. & N. Dec. at 187.

Al-Masaudi hypothesizes examples of conduct that he asserts would constitute child abuse under the Nebraska statute without meeting the generic federal definition, such as igniting fireworks that fall over and strike a child, leaving open a gate to one's swimming pool, or speeding in a motor vehicle. But an offender could be convicted in Nebraska for these acts or omissions only upon a finding of criminal negligence and endangerment of the child. If those elements were proved, then the offense would match the generic federal definition of child abuse. The Board thus did not err in concluding that Al-Masaudi's offense of conviction is categorically a crime of child abuse.

B.

Al-Masaudi also argues that the Board erred in reviewing the IJ's determination that he was convicted of a "particularly serious crime" that makes him ineligible for asylum or withholding of removal. *See* 8 U.S.C. §§ 1158(b)(2), 1231(b)(3)(B). He first claims that the Board used the wrong standard of review when determining whether the IJ improperly relied on newspaper articles in conducting her analysis. But the Board properly considered *de novo* whether the articles were inadmissable hearsay, *see* 8 C.F.R. § 1003.1(d)(3)(ii), and correctly concluded that they were not. The Federal Rules of Evidence do not apply in immigration proceedings, and the agency may consider any reliable information in

making a "particularly serious crime" determination. *Jama v. Wilkinson*, 990 F.3d 1109, 1116 (8th Cir. 2021). The articles at issue reported injuries sustained by Al-Masaudi's son during the incident that led to the conviction for child abuse. The articles are contemporaneous accounts from a local newspaper where the crime occurred, and Al-Masaudi agreed on cross-examination that his son suffered the injuries noted in the articles: bleeding in his brain and behind his eyes. Under these circumstances, the articles were sufficiently reliable to be considered by the agency, and the Board did not err in rejecting this challenge to the IJ's decision.

Al-Masaudi next challenges the Board's conclusion that he was convicted of a particularly serious crime. Al-Masaudi does not challenge the legal framework that the Board uses to make this determination. If an alien applying for withholding of removal was not sentenced to at least five years' imprisonment for committing aggravated felonies, the agency "must determine whether the elements of the offense . . . potentially bring the crime into a category of particularly serious crimes." *Jama*, 990 F.3d at 1115 (alteration in original) (internal quotation omitted). The agency then considers "the nature of the conviction, the type of sentence imposed, and the circumstances and underlying facts of the conviction." *In re N-A-M-*, 24 I. & N. Dec. 336, 342 (BIA 2007); *see Jama*, 990 F.3d at 1116. The Board possesses some discretion to decide whether an alien has been convicted of a particularly serious crime, *see* 8 U.S.C. § 1231(b)(3)(B), although not the sort of "specified" discretion that makes the decision unreviewable. *See Hassan v. Holder*, 446 F. App'x 822, 823 (8th Cir. 2012) (per curiam); *Nethagani v. Mukasey*, 532 F.3d 150, 154-55 (2d Cir. 2008); *Alaka v. Att'y Gen. of the U.S.*, 456 F.3d 88, 98, 101-02 (3d Cir. 2006). We therefore review the Board's determination for abuse of discretion. *See Arbid v. Holder*, 700 F.3d 379, 384-85 (9th Cir. 2012) (per curiam); *Denis v. Att'y Gen. of the U.S.*, 633 F.3d 201, 217 (3d Cir. 2011).

The Board first observed that crimes against persons are more likely to be categorized as particularly serious crimes. *See Jama*, 990 F.3d at 1116. Having

already determined that Al-Masaudi's offense of conviction requires the impairment of a child's physical well-being, the Board concluded that the offense was a crime against a person and thus potentially a particularly serious crime. The Board then considered the facts and circumstances of the offense, giving particular weight to the serious bodily injury sustained by Al-Masaudi's son. The Board also considered Al-Masaudi's asserted mitigating factors, including that he was convicted of acting with negligence rather than intentionally. But the Board reasonably concluded that the lesser charge did not diminish the gravity of the crime to the point where an offense involving serious bodily injury to a six-month-old was not particularly serious. The Board did not abuse its discretion in concluding that Al-Masaudi was convicted of a particularly serious crime.

## C.

Al-Masaudi further claims that the Board failed properly to review the IJ's denial of his application for cancellation of removal under 8 U.S.C. § 1229b(a). He faults the Board for failing to identify the evidence that it considered in upholding the IJ's decision. The record shows, however, that the Board expressly adopted the IJ's reasons for denying Al-Masaudi's application, and the IJ's decision discloses the evidence on which it relied. To the extent that Al-Masaudi also challenges the Board's weighing of the evidence in affirming the IJ's decision, this court lacks jurisdiction to review the Board's discretionary determination. 8 U.S.C. § 1252(a)(2)(B)(i).

## D.

Finally, Al-Masaudi challenges the denial of his petition for deferral of removal under the Convention Against Torture. To qualify for relief under the Convention, an alien must show that it is more likely than not that he would be tortured if removed to the proposed country of removal. 8 C.F.R. § 1208.16(c); *Malonga v. Mukasey*, 546

-7-

F.3d 546, 554-55 (8th Cir. 2008). Whether an alien is likely to suffer torture if returned to another country is a question of fact. *Lasu v. Barr*, 970 F.3d 960, 966 (8th Cir. 2020). Where the IJ finds no likelihood of torture, and the Board determines that there is no clear error in that finding, we review the agency's finding under the deferential "substantial evidence" standard. *Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020). Under that standard, the agency's findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

Al-Masaudi first criticizes the IJ's determination that he did not suffer past torture while in Iraq and her alleged failure to address a written statement of Al-Masaudi's in the administrative record. In the final agency action, however, the Board assumed in the alternative that Al-Masaudi suffered past torture and cited the statement in question, but determined that the evidence was still insufficient to show error by the IJ. Al-Masaudi next claims that the Board made an improper factual finding in evaluating the declaration of an expert witness on the risk of torture for returnees in Iraq. The Board did not run afoul of its regulation forbidding fact-finding on appeal, because it simply concluded that the evidence cited by Al-Masaudi was insufficient to justify disturbing the IJ's decision.

Al-Masaudi argues that he demonstrated a likelihood of torture due to his criminal history and lack of valid Iraqi identification. The record does include a declaration from an expert opining that persons deported to Iraq from the United States are likely to be detained and interrogated, and that they may be subject to torture in aid of interrogation if the Iraqi government believes that they are involved in terrorism or have a serious criminal record. The declaration also states that people without valid identification are at "significant risk of arrest" and interrogation, and that "in some cases" arrestees have been tortured during investigation. But Al-Masaudi did not introduce evidence suggesting a likelihood that Iraqis would suspect him of participating in terrorism or that he would be without any form of valid

identification after returning to Iraq. While Al-Masaudi committed a "particularly serious crime" for purposes of our immigration law, the record is vague about what sort of "serious criminal record" would lead Iraqi authorities to detain, interrogate, and potentially torture a returnee. The Board concluded that Al-Masaudi failed to identify evidence "establishing that his criminal record would be considered sufficiently serious such that it is more likely than not that public officials would seek to torture him upon his return to Iraq." Without more specific evidence that Iraqi authorities would detain and torture a returnee based on a conviction in this country for negligent child abuse, the record does not compel a conclusion that the agency erred.

*     *     *

The petition for review is denied.

_____